**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


SHERI FLANNAGAN,              )
                                           )
            **Plaintiff,**        )
                                           )    **CIVIL ACTION**
v.                                     )
                                         )    **No. 12-4050-JWL**
CAROLYN W. COLVIN,[1]      )
Acting Commissioner of Social Security,  )
                                         )
            **Defendant.**     )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying Social Security Disability(SSD) benefits and
Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and
1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment
shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the
final decision of the Commissioner.

## I.      Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for SSD and SSI alleging disability beginning March 1, 2007. (R. 31, 159-71). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. (Doc. 1) She alleges the Administrative Law Judge (ALJ) erred in evaluating the opinion of her treating social worker and consequently failed to find that she has severe mental impairments, in failing to include mental limitations in the residual functional capacity (RFC) assessment, and in using Plaintiff's continued smoking to discount the credibility of her allegations of symptoms. The Commissioner argues that the ALJ properly assessed severe impairments at step two of the sequential evaluation process, properly determined Plaintiff's mental impairments are not severe, and properly found no mental limitations in the RFC assessment. She argues that substantial record evidence supports the ALJ's RFC assessment--that the ALJ properly considered the credibility of Plaintiff's allegations of symptoms and used Plaintiff's continued smoking to demonstrate the weakness of the attempts Plaintiff made to relieve her breathing problems, and that the ALJ properly considered Ms. Waddell's "other source" opinion and properly discounted it.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision at issue.  The court begins with

consideration of the ALJ's evaluation of the opinion of Plaintiff's treating social worker,

and it will end with consideration of the ALJ's evaluation of the credibility of Plaintiff's

allegations of symptoms.

## II.     Evaluation of the Other Medical Source Opinion

Plaintiff's social worker, Kathleen Waddell completed an opinion stating that

Plaintiff was unable to work because she is unable to work with the general public,

because she cannot be socially appropriate, and because she has great difficulty with unfamiliar people and places. (R. 945-46). The ALJ accorded this opinion "little weight" because it is "not supported by reports of record," and because as a "counselor," Ms. Waddell is "not an 'acceptable medical source.'" (R. 40). Plaintiff claims the ALJ recognized Ms. Waddell's opinion as an "other source" opinion but not as an "other" medical source opinion, failed to analyze Ms. Waddell's opinion in accordance with Social Security Ruling (SSR) 06-03p, and failed to explain how he found that Ms. Waddell's reports did not support her opinions. The Commissioner argues that the ALJ properly considered the medical opinion evidence and "provided valid reasons for discounting Ms. Waddell's 'other source' opinion." (Comm'r Br. 28). She argues that the ALJ properly classified Ms. Waddell's opinion as an "other source" opinion, and it was not error to fail to further classify the opinion as an "other medical source" opinion. Id. at 31-32.

As both parties agree, the determination of this issue is controlled by SSR 06-3p and the regulations upon which it is based. (Pl. Br. 8-10) (Comm'r Br. 31). In accordance with the regulations, the term "acceptable medical source" includes only certain named classes of professionals: licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513, 416.913; SSR 06-3p West's Soc. Sec. Reporting Serv., Rulings 328-29 (Supp. 2013). Therapists are among another group of health-care providers called "other" medical sources from whom the Commissioner will accept and

use evidence showing the severity of a claimant's impairment(s) and how the impairment(s) affects claimant's ability to work.  Id. §§ 404.1513(d)(1), 416.913(d)(1).  "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions."  Id. §§ 404.1527(a)(2), 416.927(a)(2).  A "treating source" must be an "acceptable medical source," Id. §§ 404.1502, 416.902, and only a medical opinion from a "treating source" may be given controlling weight, and then only in certain circumstances.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Applying these regulations, a social worker is an "other" medical source, not an "acceptable medical source" or a "treating source."  Id. §§ 404.1513(d)(1), 416.913(d)(1).  Therefore, a therapist's opinion is not, strictly speaking, a "medical opinion," and it is never entitled to controlling weight.

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse-practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2013).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and

licensed clinical social workers, have increasingly assumed a greater
percentage of the treatment and evaluation functions previously handled
primarily by physicians and psychologists. Opinions from these medical
sources, who are not technically deemed "acceptable medical sources"
under our rules, are important and should be evaluated on key issues such as
impairment severity and functional effects, <u>along with the other relevant
evidence in the file.</u>

<u>Id.</u>, Rulings, 330-31(emphasis added).

SSR 06-3p explains that where a treating source opinion is not given controlling
weight, opinions of "other sources" will be evaluated using the regulatory factors for
evaluating medical opinions. <u>Id.</u> at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927). In
the Ruling, the Commissioner recognizes that an ALJ may be justified in according
greater weight to the opinion of an "acceptable medical source," but that "depending on
the particular facts in a case, and after applying the factors for weighing opinion evidence,
an opinion from a medical source who is not an 'acceptable medical source' may
outweigh the opinion of an 'acceptable medical source,' including the medical opinion of
a treating source." <u>Id.</u> at 332. The ruling explains that an ALJ "generally should explain
the weight given to opinions from these 'other sources,' or otherwise ensure that the
discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to
follow the adjudicator's reasoning, when such opinions may have an effect on the
outcome of the case." <u>Id.</u> at 333; <u>see also</u>, <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1300 (10th
Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR
06-3p).

Plaintiff's argument that the ALJ erred in identifying Ms. Waddell as an "other source" rather than an "other medical source" is merely an exercise in semantics which is without merit. The regulations provide that only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). But, they provide that the agency may also use evidence from "other sources" beyond "acceptable medical sources" to show the severity of a claimant's impairments, and how they affect the claimant's ability to work. Id. §§ 404.1513(d), 416.913(d). The regulations define these "other sources" as "medical sources" (who are not "acceptable medical sources"), "educational personnel," "social welfare agency personnel," and "other non-medical sources." Id. §§ 404.1513(d)(1-4), 416.913(d)(1-4). SSR 06-3p makes identical distinctions. West's Soc. Sec. Reporting Serv., Rulings 329 (Supp. 2013) (citing 20 C.F.R. §§ 404.1513(d), and 416.913(d)). The group of persons identified as "other non-medical sources" in the regulations (spouses, relatives, caregivers, friends, neighbors, etc.), are identified in the Ruling as "'non-medical sources' who have not seen the individual in a professional capacity in connection with their [sic] impairment." Id., Rulings at 333. "Other source" is a regulatory classification which encompasses all four of the subclasses, including other "medical sources." Therefore, a therapist, counselor, or licensed clinical social worker such as Ms. Waddell who has treated Plaintiff may properly be called "an 'other source,' not an licensed physician or licensed psychologist," as the ALJ did in this case. (R. 40).

The ALJ was merely emphasizing the fact that Ms. Waddell is not an "acceptable medical source."

Plaintiff appeals to the case of <u>Nielsen v. Astrue</u>, decided by Judge Crow of this court, as support for the proposition that remand is necessary because the ALJ here did not identify Ms. Waddell as an "other medical source." (Pl. Br. 9-10) (citing 2010 U.S. Dist. LEXIS 118987 (D. Kan. Nov. 8, 2010)). <u>Nielsen</u> is easily distinguishable from this case. There, the ALJ erroneously stated that "a licensed social worker and a therapist, is not a medical source pursuant to 20 C.F.R. §§ 404.1503 and 416.913." 2010 U.S. Dist. LEXIS 118987 at *10. Here, on the other hand, the ALJ recognized that Ms. Waddell is a medical source pursuant to 20 C.F.R. §§ 404.1503 and 416.913, but stated that she was not an "acceptable medical source" because "a counselor is an 'other source' not a licensed physician or licensed psychologist." (R. 40). Even though the ALJ earlier referred to Ms. Waddell as a "non-medically qualified counselor" (R. 40), in context it is clear that the ALJ considered Ms. Waddell as a counselor, an "other" medical source pursuant to SSR 06-3p, but not medically qualified as an "acceptable medical source." <u>Id.</u>

Plaintiff's argument that the ALJ failed to apply SSR 06-3p and did not consider the regulatory factors for evaluating medical opinions as required by that ruling is equally unavailing. In the first place, as discussed above the ALJ applied the ruling in evaluating Ms. Waddell's opinion as an "other source" opinion, and he specifically cited SSR 06-3p and 20 C.F.R. §§ 404.1513 and 416.913 in his analysis of Ms. Waddell's opinion.

The ALJ also clearly considered the regulatory factors for evaluating medical opinions because he discounted Ms. Waddell's opinion in part because it was not consistent with other record evidence--one of the regulatory factors. Plaintiff appears to expect that an ALJ will discuss <u>every</u> regulatory factor when evaluating the opinion of a medical source, but that is not the standard. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reasons for that weight.'" <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003)). Moreover, Plaintiff does not point to any specific factor which the ALJ missed and which requires that greater weight be accorded to Ms. Waddell's opinion.

In her final argument in this regard, Plaintiff states that the ALJ discounted Ms. Waddell's opinion because it "was not supported by her treatment notes." (Pl. Br. 12) (citing R. 40). Plaintiff's argument misunderstands the decision. As one of his reasons for discounting Ms. Waddell's opinion, the ALJ found that Ms. Waddell's "opinions are not supported by <u>reports of record.</u>" (R. 40) (emphasis added). As the quoted sentence reveals, the ALJ did not find that Ms. Waddell's opinions are not supported by <u>her</u> treatment notes; he found that her opinions are not supported by other reports in the record.

And, as the Commissioner explained in her brief, the ALJ's finding is supported by the record evidence. She points out that Ms. Waddell's opinion is inconsistent with

Plaintiff's reports and activities. (Comm'r Br. 29-30) (citing R. 260-61). She also points

out other medical reports in the record which are inconsistent with Ms. Waddell's

opinion. Id. at 30 (citing R. 509, 518, 672). Plaintiff's argument that Ms. Waddell's

treatment notes and the Global Assessment of Functioning (GAF) scores assigned therein

support Ms. Waddell's opinion is irrelevant to the ALJ's actual finding, and appears to be

an attempt to ask the court to reweigh the evidence and accord greater weight to the

opinion than did the ALJ. The court may not do so. Bowman, 511 F.3d at 1272; accord,

Hackett, 395 F.3d at 1172. The mere fact that there is evidence in the record which might

support a contrary finding will not establish error in the ALJ's determination. "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence. [The

court] may not displace the agency's choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been

before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see

also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) ("the possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence.").

Because Plaintiff has shown no error in the ALJ's evaluation of Ms. Waddell's

opinion, she cannot demonstrate that the ALJ erred in finding that she has no severe

mental impairments. The only record evidence to which Plaintiff cites to demonstrate

that her mental impairments have more than a minimal effect on her mental ability to

perform basic work activities is Ms. Waddell's opinion.  (Pl. Br. 11).  Plaintiff also argues

that the ALJ's finding that she would experience some "mental symptoms as a result of

her impairments" establishes that she meets the <u>de minimis</u> standard for a severe mental

impairment at step two of the sequential evaluation process.  <u>Id.</u> at 11-12.

The problem with Plaintiff's argument is that the question at step two is not

whether Plaintiff would experience symptoms from her impairments, but whether the

impairment would have more than a minimal effect on her ability to do basic work

activities.  <u>Williams</u>, 844 F.2d 748, 751 (10th Cir. 1988).  Moreover, she must show more

than the mere presence of a condition or ailment.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352

(10th Cir. 1997). (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987)).  The fact that

Plaintiff experiences symptoms from her mental impairments does not establish that those

mental impairments are severe within the meaning of the Act.

### III.    No Mental Limitations Assessed in the ALJ's RFC Assessment

Plaintiff's next claim is that the ALJ erred in failing to include mental limitations

in the RFC assessed for Plaintiff.  Plaintiff points out that the ALJ found that she has the

medically determinable impairments of depression and anxiety even though he found

those mental impairments are not severe.  She points out that the ALJ found that

Plaintiff's mental impairments cause mild limitations in activities of daily living, mild

limitations in social functioning, and mild limitations in concentration, persistence, or

pace.  She points out that even though an impairment is not severe within the meaning of

the Act, that impairment must be considered by an ALJ in assessing RFC.  Finally, she

points out that the ALJ acknowledged that Plaintiff would experience some mental symptoms from her depression and anxiety, and that he did not reject Ms. Waddell's opinion but rather accorded it "little weight." Based upon these facts, and citing to this court's decision in Hunter v. Astrue, 2011 U.S. Dist. LEXIS 18470 (D. Kan. Feb. 24, 2011), Plaintiff asserts that it was reversible error for the ALJ to fail to include mental limitations in the RFC assessed. The Commissioner argues that substantial record evidence supports the ALJ's RFC assessment, but she does not address Plaintiff's specific argument that it was error to include no mental limitations in the assessment.

The court finds that its determination regarding this issue is controlled by a recent decision of the Tenth Circuit addressing the issue of an ALJ's failure to include mental limitations in an his RFC assessment although he found medically determinable mental impairments which were not severe. Wells v. Colvin, slip op. at 10-17, 2013 WL 4405723, ___ F.3d ___, ___, (10th Cir. Aug. 19, 2013). The court in Wells recognized the Psychiatric Review Technique used by the Commissioner to evaluate the severity of mental impairments and their effect on a claimant's ability to work at steps two and three of the sequential evaluation process. Id. slip op. at 10-11. It noted that the technique requires an ALJ to first determine whether the claimant has any medically determinable impairments, and thereafter to "rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: '[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and

episodes of decompensation.'" <u>Id.</u> at 10-11 (quoting 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)).

In <u>Wells</u>, as in this case, the ALJ determined that the claimant had no more than "mild" limitations in each of the first three functional areas, and "no" limitations in the fourth area. <u>Id.</u> at 11. As the court acknowledged in <u>Wells</u>, in such a case the regulations require a finding that the claimant's mental limitations are "not severe." <u>Id.</u> The court noted however, that even when mental impairments are found "not severe" at step two, the ALJ must consider the combined effect of <u>all</u> medically determinable impairments in his RFC assessment. <u>Id.</u> at 12. The ALJ in <u>Wells</u> stated that his step two findings did not result in further limitations in the RFC assessment, and reiterated his conclusion that the mental impairments were not severe. <u>Id.</u> The court noted, "The language used suggests that the ALJ may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures." <u>Wells</u>, <u>slip op.</u> at 12. However, the court also noted that the ALJ did discuss the mental impairment to some degree as part of his RFC assessment, and stated that the ALJ's discussion "though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC." <u>Id.</u> at 14. Nevertheless, the court noted that the ALJ's conclusions in that regard were not supported by the record evidence, and therefore, it did not need to determine whether the step four discussion was procedurally adequate. <u>Id.</u>

14

Here, the ALJ properly found at step two that Plaintiff's depression and anxiety are not severe. (R. 36). As Plaintiff pointed out repeatedly, the ALJ also acknowledged that Plaintiff would experience some mental symptoms as a result of her impairments. (R.38). The ALJ found that "[r]eports indicate [Plaintiff's] mental problems are improved on medications," and explained that "[w]hen a claimant's impairment is improved by treatment or medication, then only the limitations remaining after such treatment are considered for disability purposes." Id. The ALJ noted Plaintiff's report that she "has no problems getting along with family, friends and neighbors. She also indicated she can pay attention for a long time and is able to follow written and spoken instructions 'very well.' She related being able to get along with authority figures 'very well,' and she can handle stress and changes in routine 'alright.'" (R. 38). The ALJ noted that Plaintiff's level of activity and her reports of these mental abilities demonstrate "an ability to concentrate and interact with others." (R. 38-39). Finally, the ALJ accorded "little weight" to Ms. Waddell's opinion regarding mental limitations, and accorded "significant weight" to the opinions of Dr. Karsh and Dr. Timmerman, who suggested no mental limitations for Plaintiff, and noted that the record shows symptom magnification and that Plaintiff's alleged limitations "are far out of proportion to the medical findings." (R. 39, 40). Although, a more thorough explanation addressed more explicitly to the issue of mental limitations may have been preferable, the court finds that the ALJ in this case provided a narrative discussion sufficient for the court to understand why the ALJ

assessed no mental limitations in the RFC beyond those inhering in a determination that Plaintiff can perform only unskilled work. More is not required.

Plaintiff's appeal to <u>Hunter</u> does not require a different conclusion. In <u>Hunter</u>, similar to this case, the ALJ found the claimant's mental impairments were not severe and found no mental limitations in the RFC assessed, but there the ALJ found the claimant capable of a full range of sedentary work. <u>Hunter</u>, 2011 U.S. Dist. LEXIS 18470, at *9-10. The ALJ's finding in <u>Hunter</u> was based on the report of a psychologist, Dr. Moeller, that the claimant retains "sufficient psychological functioning to engage in simple, gainful employment." <u>Id.</u> at *10. However, this court in <u>Hunter</u> noted that Dr. Moeller had also opined that Plaintiff's "stream of thought was distinctly tangential. Additional structure was necessary to keep her focused and on task." <u>Id.</u> The court reasoned that "the ability to engage in simple, gainful employment . . . is neither obviously nor intuitively equivalent to the ability to engage in a full range of sedentary work, <u>especially if the subject's thinking is tangential and additional structure is necessary to keep her focused</u>." <u>Hunter</u>, 2011 U.S. Dist. LEXIS 18470, at *10-11. The court noted that the ALJ did not reject Dr. Moeller's limitations, but did not explain how the limitations allow the ability to perform a full range of sedentary work either. <u>Id.</u> at *11.

The error in <u>Hunter</u> is not present here. Here, although Ms. Waddell's limitations conflict with the finding that mental limitations need not be included in the RFC assessment, the ALJ discounted Ms. Waddell's opinion, and did not accept a portion of

that opinion while ignoring a more limiting portion of the opinion as the ALJ in <u>Hunter</u> did.

## IV.     The Credibility Determination

In her final argument, Plaintiff claims that the ALJ improperly relied upon her continued smoking to discount the credibility of her allegations of symptoms without applying the <u>Frey</u> test, and that this failure requires remand for a proper credibility assessment.  (Pl. Br. 17-18) (citing <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987). The Commissioner argues that the ALJ properly considered the credibility of Plaintiff's allegations of symptoms.  She points to the ALJ's findings:  that the objective medical evidence is inconsistent with Plaintiff's allegations, that conservative medical treatment controlled Plaintiff's symptoms, that Plaintiff's use of a cane was not medically necessary, that Plaintiff's documented activities were inconsistent with her alleged limitations, that the record contained evidence that Plaintiff exaggerated her symptoms, and that Plaintiff continued to smoke cigarettes despite her allegedly severe breathing symptoms.  (Comm'r Br. 21-25).  Next, the Commissioner argues that the <u>Frey</u> test is not necessary in the circumstances of this case because in considering Plaintiff's smoking the ALJ was merely "considering 'what attempts plaintiff made to relieve [her symptoms] . . . in an effort to evaluate the veracity of plaintiff's contention that [her symptoms were] so severe as to be disabling.'" <u>Id.</u> at 26 (quoting <u>Reid v. Astrue</u>, No. 11-1023-JWL, 2012 WL 426943, at *11 (D. Kan. Feb. 10, 2012)).  Finally, the Commissioner points to "other

evidence" in the record which supports the ALJ's determination that Plaintiff is not disabled.  Id. at 26-27.

The court's review of an ALJs' credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Moreover,

> [b]ecause a credibility assessment requires consideration of all the factors "in combination," [] when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (emphasis in original) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988) (citation omitted)).

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

As Plaintiff's Brief suggests, the court in <u>Frey</u> stated a test which should be applied by an ALJ in a situation where a claimant has refused to follow or failed to undertake treatment recommended by her physician. "In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." <u>Frey</u>, 816 F.2d at 517. But, as the Commissioner's Brief suggests, the Tenth Circuit has also recognized that the <u>Frey</u> test should not be applied in those situations where treatment has not been prescribed, but where the ALJ is merely considering "what attempts plaintiff made to relieve his pain-- including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). Although the court applauds the Commissioner on her creative manner of applying <u>Qualls</u> to the circumstances of this case, the court cannot agree that <u>Qualls</u> rather than <u>Frey</u> applies here. The controlling point in this case is the ALJ's finding that "it is reasonable to conclude that if the claimant actually had disabling asthma, she could avail herself of <u>her physician's repeated recommendations to stop smoking to help improve her obstructive airway disease</u>." (R. 39) (emphasis added). The ALJ's appeal to Plaintiff's failure to take her "physician's repeated recommendations to stop smoking" clearly implicates a refusal or failure to undertake recommended treatment

and requires that the Frey test be applied before the ALJ may use her failure to follow the recommended treatment to discount the credibility of Plaintiff's allegations of symptoms.

However, Plaintiff seeks to use the ALJ's failure to apply the Frey test as a controlling factor to find the credibility determination erroneous and require remand for a new determination. Plaintiff simply does not discuss anything else about the ALJ's credibility determination, and thereby fails to recognize that the ALJ based his credibility determination on other factors also, and that a credibility determination requires consideration of all of the relevant factors in combination. Without doubt, the ALJ erred in relying on Plaintiff's failure to quit smoking to discount the credibility of her allegations. However, when excluding that factor from consideration, the court finds that substantial record evidence (especially when considering the ALJ's reliance on several incidents in which it was reported that Plaintiff exaggerates her symptoms) supports the ALJ's determination that Plaintiff's allegations are not credible.

The court finds the decision in Branum v. Barnhart, 385 F.3d 1268 (10th Cir. 2004) instructive in these circumstances. In that case, the ALJ found the plaintiff's allegations of disabling pain were not credible, and one of the reasons given for doing so was because "the evidence fails to reflect that claimant sought any definitive treatment." 385 F.3d at 1274. The court noted that the plaintiff was "correct that 'the ALJ may not discredit [her] for a lack of treatment or aggressive testing when . . . she has a legitimate reason for [failing] to get additional treatment, such as a lack of funds.'" Id. (quoting the plaintiff's brief which quoted Thompson, 987 F.2d at 1490). Although the court

expressed "some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores," it concluded "that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record," and it affirmed the decision below.  Branum, 385 F.3d at 1274. The error in Branum was a failure to apply the Frey test as explained in Thompson, 987 F.2d at 1486, 1490.  Nevertheless, the court determined that the balance of the credibility analysis was supported by substantial record evidence.  The same is true here.  Therefore, the court finds that the ALJ's error in failing to apply the Frey test here is harmless.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Dated this 3rd day of October 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**